IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:17-CV-156-RJ

| | |
|---|---|
| DAVID A. ELLISON,<br><br>    Plaintiff/Claimant,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security<br><br>    Defendant. | O R D E R |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-18, DE-22] pursuant to Fed. R. Civ. P. 12(c). Claimant David A. Ellison ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefing has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Commissioner is affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on October 27, 2014, alleging disability beginning January 8, 2014. (R. 165–66). His claim was denied initially and upon reconsideration. (R. 53–83). A hearing before the Administrative Law Judge ("ALJ") was held on February 17, 2017, at which Claimant, represented by counsel, and a

vocational expert ("VE") appeared and testified. (R. 33–52). On May 15, 2017, the ALJ issued a decision denying Claimant's request for benefits. (R. 10–30). The Appeals Council denied Claimant's request for review on July 25, 2017. (R. 1–5). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the ALJ erred by failing to appropriately weigh a 100% disability rating by the Department of Veterans Affairs (the "VA") connected to Claimant's post-traumatic stress disorder ("PTSD"). Pl.'s Mem. [DE-19] at 14–20.

3

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since the alleged onset date. (R. 15). Next, the ALJ determined Claimant had the severe impairments of PTSD and degenerative disc disease, and the non-severe impairments of sleep disorder and depression. (R. 15–16). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16–19). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments had resulted in moderate limitations in interacting with others, understanding, remembering, or applying information, concentrating, persisting, and maintaining pace, and adapting or managing oneself. (R. 17–18). Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding he had the ability to perform light work[1] with the following limitations:

> Due to postural limitations, the claimant is limited to no climbing or crawling. Due to environmental limitations, the claimant is limited to no exposure to workplace hazards. Additionally, the claimant must be allowed the option to alternate between sitting and standing at will to be exercised for 10 minutes each working hour. Due to mental limitations, the claimant is limited to unskilled work in a low stress work environment requiring only occasional decision making or changes. The claimant is further limited to no interaction with the public and only occasional interaction with coworkers or supervisors including jobs requiring cooperation with coworkers and not just physical proximity.

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

(R. 19–25). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work. (R. 25). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 26–27).

## V. DISCUSSION

### A.  The VA Disability Rating

Claimant contends the ALJ erred in failing to accord substantial weight to his PTSD-connected 100% VA disability rating without demonstrating a deviation was appropriate in violation of *Bird v. Commissioner of Social Security Administration*, 699 F.3d 337 (4th Cir. 2012). Pl.'s Mem. [DE-19] at 14–20. Specifically, Claimant alleges three errors in the ALJ's analysis: failing to assign a specific weight to the VA disability rating, making inconsistent findings, and failing to demonstrate that assigning less than substantial weight to the VA decision was appropriate. *Id.* The Commissioner contends the ALJ's determination is supported by substantial evidence. Def.'s Mem. [DE-23] at 6–8.

In *Bird*, the Fourth Circuit noted that "both the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." 699 F.3d at 343 (citation omitted). "Thus, . . . in making a disability determination, the SSA must give substantial weight to a VA disability rating" unless the record clearly demonstrates that a lesser weight is appropriate. *Id.* ("[B]ecause the SSA employs its own standards for evaluating a claimant's alleged disability . . . an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.").

5

The ALJ considered the VA's decision as follows:

> [T]he claimant is a recipient of Veterans benefits. I am mindful that the claimant has been found disabled by the Veteran's Administration (VA) and is currently receiving disability payments from that agency. (Exhibits 1F–2F and 5F–7F)[.] That finding corresponded to the claimant's testimony that he was granted a service connected rating of 100% for Post-Traumatic Stress Disorder (PTSD) and 60% for his back. However, the Social Security Administration makes determinations of disability according to Social Security law, therefore a determination of disability by another agency is not binding on this Administration. (§§ 20 CFR 404.1504 and 416.904). With this in mind, after weighing and measuring the extensive medical evidence from the VA, I find that their determination does substantiate the awarding of disability benefits pursuant to their regulations. However, the value of their opinions is reduced because the VA records appear to rely heavily upon the claimant's subjective complaints rather than diagnostic findings of examination evidence. Therefore, as discussed in more detail below, while I do agree with the VA determination that medically determinable impairments limit the claimant's functioning, I do not find that they fully establish disability under SSA criteria.

(R. 24–25).

Claimant contends that the ALJ's statement seemingly affirming the VA's decision to award benefits *under the VA regulations* is inconsistent with his determination that Claimant's PTSD is not disabling. To the extent the ALJ is attempting to distinguish between the VA and SSA regulations, while they are obviously distinct, the Fourth Circuit in *Bird* recognized that "the purpose and evaluation methodology of both [the VA and SSA disability] programs are closely related." 699 F.3d at 343. Nevertheless, the ALJ's statement ultimately amounts to nothing more than dictum, or at worst harmless error. The ALJ went on to explain that his decision to discount the VA disability rating was based on the fact that it relied heavily on Claimant's subjective complaints, rather than diagnostic findings or examination evidence. (R. 25). Further, as discussed in detail below, the ALJ considered the treatment records from the VA and determined they did not establish that Claimant's PTSD precluded him from performing all work. (R. 21–22). Therefore, under the circumstances, the ALJ's statement regarding the

6

correctness of the VA's determination under its own standards is not grounds for remand. *See McDonald v. Colvin*, No. 3:15-CV-00598-MOC, 2016 WL 4084040, at *7 (W.D.N.C. July 29, 2016) (upholding the ALJ's decision to give less weight to a favorable VA disability rating despite the ALJ's erroneous statement, in contravention of *Bird*, that VA disability ratings are "of little probative value," where the ALJ went on to fully consider the VA disability rating and provided substantial evidence for discounting it).

Claimant also contends the ALJ did not sufficiently explain his reasoning for deviating from the VA disability rating. Despite the abbreviated nature of the ALJ's explanation, the ALJ's decision read as a whole contains substantial evidence supporting the deviation. In the RFC discussion, the ALJ considered much of the evidence Claimant cites in his brief. The ALJ acknowledged Claimant's testimony regarding the effects of his PTSD, including problems with anger, being fired from 10 of the 15 to 17 jobs he held since his military discharge in 1993, altercations with supervisors, co-workers, family members, and strangers, destroying property at work and at home, experiencing road rage, and brandishing a gun. (R. 20). The ALJ also noted Claimant's testimony that, as a result of his PTSD, he usually stays at home, isolates himself in his room, and experiences suicidal thoughts regularly. *Id.* The ALJ recounted Claimant's treatment with the VA for his PTSD, beginning in 2010 through November 2016, as follows:

> In 2010, the claimant reported PTSD symptoms during a mental health evaluation with a team of two licensed counselors and social workers (Exhibit 2F/306–313). Starting on June 7, 2010, the claimant began presenting for counseling to address his PTSD symptoms (Exhibit 2F/303). By October 25, 2010, Thomas Kirtley, M.D., was treating the claimant's PTSD related symptoms with prescription medications including Citalopram (Exhibit 2F/293–294). By December 23, 2010, the claimant reported improvement in his symptoms (Exhibit 2F/286–287). Subsequently, the claimant continued to present for recurring PTSD counseling sessions (Exhibit 2F/134–284). After his alleged onset date, the claimant was screened positively for PTSD on April 22, 2014 (Exhibit 5F/51). During a follow-up on August 11, 2014, the claimant reported suicidal ideations (Exhibit

7

> 5F/32). However, [claimant] also reported that these ideas were "not as intense" and that his emotional outbursts have improved following treatment with medications (Exhibit 5F/32). Subsequently, the claimant continued to present for group counseling sessions related to his PTSD (Exhibit 5F/8–28). On November 11, 2014, the claimant reported doing "fairly well" (Exhibit 5F/15). Although the claimant subsequently reported benefit from counseling, on January 8, 2015, he also reported losing his temper while at Wal-Mart (Exhibit 5F/9). As a result, Mark Basquill, Ph.D., assessed the claimant with a mild level of problem severity and complexity (Exhibit 5F/9).
>
> . . . .
>
> [T]he claimant continued to present for mental health group therapy with symptoms primarily related to his PTSD (Exhibit 6F/21–81). In 2015, the claimant's PTSD was described as stable (Exhibit 7F/42). However, Liza Schaffner, a psychiatrist, advised that the claimant's symptoms should be reassessed after the claimant reported worsening irritability due to PTSD (Exhibit 7F/33–36). Throughout 2015, Dr. Mark Basquill also continued to treat the claimant for anger management and mindfulness on a recurring basis (Exhibit 7F/2–25).
>
> . . . .
>
> On March 11, 2016, the claimant's PTSD was again described as stable with his treatment (Exhibit 6F/56). . . . On September 20, 2016, Dr. Basquill assessed the claimant's PTSD as being a mild level of complexity and a mild level of severity even after the claimant reported an incident where he "briefly unholstered a weapon when under threat" from his wife's younger cousin (Exhibit 6F/29–30). On November 28, 2016, Dr. Basquill noted that the claimant was making "good" progress (Exhibit 6F/18).

(R. 21–22). The ALJ also considered the December 23, 2014 opinion of Henry Tonn, Psychological Associate, and Michael Affeman, Ph.D., that Claimant would have difficulty keeping a job due to a low frustration tolerance leading to problems interacting with others because of his PTSD. (R. 24, 824–27). The ALJ assigned this opinion partial weight because it was two years old. (R. 24).

The ALJ fully considered Claimant's PTSD, including Claimant's testimony, the medical records from the VA, the VA disability rating, and the opinion evidence, and it is not the court's

8

role to re-weigh evidence. *Mastro*, 270 F.3d at 176 (citing *Craig*, 76 F.3d at 589). Further, the ALJ sufficiently explained his reasoning, concluding Claimant's PTSD symptoms had improved with treatment and specifically citing Dr. Basquill's more recent assessments, while acknowledging that Claimant's PTSD still impacted his functioning. (R. 22–23, 25). The ALJ imposed restrictive conditions in the RFC to account for Claimant's PTSD, requiring unskilled work in a low-stress environment, only occasional decision making or changes, no interaction with the public, and only occasional interaction with coworkers or supervisors. (R. 19). Thus, the ALJ's decision not to give substantial weight to the VA disability rating is supported by substantial evidence. *See Comer v. Colvin*, No. 1:16-CV-199, 2016 WL 7176602, at *4 (M.D.N.C. Dec. 8, 2016) (finding no error in the ALJ's evaluation of the VA disability rating, where the ALJ's determination that the VA disability rating was inconsistent with the record was supported elsewhere in the decision), *adopted by* No. 1:16-CV-199, Order [DE-14] (M.D.N.C. Jan. 4, 2017). Having determined substantial evidence supports the ALJ's decision, any error in failing to assign a specific weight to the VA decision is held to be harmless. *See Colon v. Berryhill*, No. 4:17-CV-53-FL, 2018 WL 1833010, at *5 (E.D.N.C. Mar. 23, 2018) (finding an error in evaluating a VA disability rating was harmless where, based on the medical evidence and functional limitations imposed, it was inconceivable the ALJ would have reached a different conclusion), *adopted by* 2018 WL 1832963 (E.D.N.C. Apr. 16, 2018).

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-18] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-22] is ALLOWED, and the final decision of the Commissioner is affirmed.

SO ORDERED, this 30th day of July 2018.

_____
Robert B. Jones, Jr.
United States Magistrate Judge